IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MAURICE JENKINS,

    Plaintiff,

v.                              Civil Action No. 3:16cv188

MID-ATLANTIC DETAILING,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT MID-ATLANTIC DETAILING (ECF No. 10) in which Mid-Atlantic seeks dismissal of the Complaint, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

The Complaint, filed by Maurice Jenkins, pro se ("Jenkins"), does not contain separate counts setting out his claims. However, as Mid-Atlantic correctly explains, the Complaint appears to posit five claims, three based on federal law and two based on state laws. Specifically, Jenkins seems to assert claims for: (1) Title VII discrimination; (2) Title VII retaliation; (3) Equal Pay Act violations; (4) Wrongful

Termination under Virginia law; and (5) Defamation under Virginia law.

For the reasons that follow, the Complaint fails to assert any legally sufficient federal claims, and thus the federal law claims will be dismissed with prejudice. And, the Court exercises its discretion under 28 U.S.C. § 1367 and declines to exercises jurisdiction over the Virginia law claims which will be dismissed without prejudice.

**BACKGROUND**

Jenkins was hired by National Automotive Charging Systems, Inc. in March 2014 as a Class B driver.[1] (Compl. ¶ 1). After a month of employment, on or about April 14, 2014, Jenkins was given a raise. (Compl. ¶ 2). In April 2014, Jenkins's co-worker, Jim, planned to take a two-week vacation. Jenkins's manager, Pat, asked Jenkins if he wanted to cover Jim's route during this period. Jenkins states that "Pat assured [him] that [he] was going to make a lot of money taking this route."

---

[1] The COMPLAINT (ECF No. 1) does not include paragraph numbers. Defendant provided a numbered Complaint in the MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT MID-ATLANTIC DETAILING (ECF No. 11-1). All paragraph references to the Complaint are based on Defendant's ECF No. 11-1.

(Compl. ¶2). In order to become familiar with Jim's route, Jenkins accompanied Jim on one of his drives. Jenkins states that Jim informed him that he "did a great job" on that occasion. (Compl. ¶3). After driving part of Jim's route while Jim was on vacation, Jenkins asked another employee, Nicole, the owner's daughter, "about getting equally paid for running that particular route." (Compl. 6). Nicole indicated she did not know anything about equal pay and told Jenkins to speak with Chuck, the owner. Id.

On May 23, 2014, Jenkins was fired. See MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT MID-ATLANTIC DETAILING (ECF No. 11) (Defendant's Opening Brief, at 2). Jenkins received a pay check post-firing in the amount of his regular pay. (Compl. 6).

On June 13, 2014, Jenkins filed a claim with the Equal Employment Opportunity Commission ("EEOC"). (Compl. 6). During the EEOC investigation, the employer reported that Jenkins was fired due to complaints about his erratic driving. Id. On March 4, 2016, Jenkins received a Notice of Right to Sue. Id. On March, 24, 2016, he instituted this action.

In the COMPLAINT, Jenkins attempts to allege the following claims: (1) his employer *denied him equal pay* to which Jenkins was entitled pursuant to the Equal Pay Act, 29 U.S.C. §

206(d)(1); (2) his employer *retaliated* against him for demanding equal pay in violation of Title VII, 42 U.S.C.A. § 2000e-3; (3) his employer *discriminated* against him in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1); (4) he was *wrongfully terminated* in violation of Virginia law after demanding equal pay; and (5) his employer *defamed* him by making false statements to the EEOC, in violation of Va. Code Ann. § 8.01-45. He seeks $2,000,000.00 for damages.

**POSITIONS OF PARTIES**

In its motion to dismiss, the defendant argues that Jenkins fails to allege a prima facie case of discrimination under Title VII, either through direct evidence or through the *McDonnell Douglas* burden shifting method of discrimination. Also, the defendant argues that Jenkins fails to assert a cognizable Title VII claim of retaliation because there is no alleged casual nexus between his report to the EEOC and his termination. Next, the defendant states that Jenkins's Equal Pay Act claim must be dismissed "as he fails to identify a similarly-situated coworker of the opposite sex who received greater compensation for performing the same duties." (ECF No. 11). As to the state law wrongful termination claim, the defendant contends that Jenkins failed to cite a specific statute as the basis for his claim, as

4

required for a cognizable Bowman claim under Virginia law. Finally, the defendant argues that all statements it made to the EEOC are protected by attorney-client privilege and cannot be the basis for a defamation claim.

In the RESPONSE TO DEFENDANT MOTION TO DISMISS (ECF Nos. 13, 15) ("Jenkins's Response"), Jenkins does not address any of the legal issues raised by the defendant in the motion to dismiss. Instead, Jenkins explains that the EEOC investigation uncovered falsehoods made by his employer; specifically, Jenkins asserts that he was unaware he was under a ninety (90) day probationary period when he was hired. Jenkins explains that the harassment forms submitted by his co-workers to the EEOC were submitted after his termination and did not include his signature. Likewise, Jenkins states that Jim's statement describing his "terrible driving habits" was false. Jenkins also contests the truthfulness of the employer's statements to the EEOC about the following: (1) Jenkins's failure to show up to work following the two week period he covered Jim's route; (2) Jenkins's failure to turn in his log book for the days he covered Jim's route; (3) Jenkins's failure to stay overnight in a hotel while driving Jim's route; (4) Jenkin's aggressive behavior to delivery recipients; and (5) the disheveled appearance of Jenkins's delivery while covering Jim's route.

Jenkins further states that Mid-Atlantic must have discriminated against him because they offered Jenkins, through their attorneys, first $1,000 and then $5,000 to settle the claims. Jenkins explains that the EEOC issued him a right to sue letter "which cannot be obtained if the EEOC doesn't find any merit in [the] charges." Jenkins concludes by stating, "[t]his wrongful termination turned my life upside down and it was an obvious retaliation for just requesting the payment that I was owed."

In the REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT MID-ATLANTIC DETAILING (ECF No. 14), the defendant argues that, because Jenkins admitted that he was fired as "retaliation" for demanding "equal pay," he established that his termination was not based on race. Finally, as to the race discrimination claim, the defendant also finds it significant that Jenkins's "Complaint is devoid of any allegations of Jenkins' race or membership in a protected class . . . ."

### LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir. 2006). Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to

6

relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

When deciding a motion to dismiss, a court "draw[s] all reasonable inferences in favor of the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). Nonetheless, while the court "will accept the pleader's description of what happened" and "any conclusions that can be reasonably drawn therefrom," the court "need not accept conclusory allegations encompassing the legal effects of the pleaded facts." **Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357** (3d ed.1998); Chamblee v. Old Dominion Sec. Co., L.L.C., No. 3:13CV820, 2014 WL 1415095, *4 (E.D. Va. 2014). Nor is the court required to accept as true a legal conclusion unsupported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Twombly and Iqbal also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere formulaic recitation of the elements of a claim

and to conduct a context-specific analysis to determine whether the well-pleaded factual allegations plausibly suggest an entitlement to relief." **Wright & Miller**, supra; **Chamblee**, supra.

Although the court will "construe the pleadings of a pro se plaintiff liberally, a court considering a motion to dismiss must still evaluate the pro se plaintiff's pleadings according to the standards developed under Rule 12." Jones v. Imaginary Images, Inc., 2012 U.S. Dist. LEXIS 111682, *14, 2012 WL 3257888 (E.D. Va. Aug 8, 2012) (internal citations omitted). "Though pro se plaintiffs are properly accorded some leniency, the court need not and should not 'conjure up facts not plead to support conclusory allegations.'" Gray v. Home Depot, No. 3:14CV488, 2015 WL 224989, at *3 (E.D. Va. Jan. 15, 2015) (citing Easter v. Virginia, 2006 U.S. Dist. LEXIS 101668 (E.D.Va. Aug. 29, 2006)).

## DISCUSSION

For the reasons set forth below, the federal claims asserted by Jenkins fail to state claims upon which relief can be granted and those claims will be dismissed. The Court declines to entertain the state law claims.

A.  **Jenkins Failed to Allege that he Received Less Pay Because of His Sex, as Required to State a Claim Under the Equal Pay Act**

The Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1) states: "No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the *opposite sex* in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." (emphasis added).[2] Jenkins has not alleged that he received less pay because of his sex.

Jenkins's case is similar to that presented in Jones v. Hospital Corporation of America, wherein Jones, a pro se, Africa-American male, alleged, among other claims, an Equal Pay Act claim against his employer. 16 F. Supp. 3d 622 (E.D. Va. 2014). Jones "suspect[ed] that his salary was not equal to other similarly situated pharmacists . . . ." Id. at 627. Jones alleged that he believed his "white, male co-worker was

---

[2] The statute continues: "except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

9

paid a higher salary even though he and Jones held the same position." Id. However, "[t]he Complaint fails to allege that Jones receives less pay because of his *sex* as required to state a claim under the federal Equal Pay Act." Id. at 628-29 (emphasis added). Jones compared himself to a male pharmacist, not a female pharmacist; therefore the Court dismissed Jones's claim "as a matter of law." Id. at 629.

Here, Jenkins alleges that he failed to receive equal pay for his work.[3] (Compl. ¶ 6). Jenkins' theory of liability is that he is entitled to receive the same pay as Jim, for the time that he covered Jim's route. Jenkins claims his manager, Pat, told him he would receive "a lot of money taking this route." (Compl. ¶ 2). As was true in Jones, Jenkins is comparing himself to another male employee, Jim. Because the EPA prohibits discrimination of pay between *opposite sexes*, Jenkins's claim must be dismissed. The dismissal will be with prejudice because there is nothing to suggest that Jenkins could legitimately posit a female comparator.

---

[3] "I asked Nicole about getting equally paid for running that particular route. . . ." (Compl. ¶ 6); see also the List of Claims at the bottom of Complaint, "equal pay act" (ECF No. 4).

**B.  Jenkins's Complaint Contains No Statements Regarding Race or Racial Discrimination**

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e-2(a).

Under Title VII, there are two ways to prove discrimination: (1) through direct evidence; or (2) through circumstantial evidence under the burden-shifting scheme established in McDonnell Douglas v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "In the first method of proof, a plaintiff must provide 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Spain v. Virginia Com. Univ., No. CIV A 3:09CV266, 2009 WL 2461662, at *7 (E.D. Va. Aug. 11, 2009) (citing Rhodes v. FDIC, 257 F.3d 373, 391-92 (4th Cir. 2001)). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of

11

Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Maryland, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012).

There is no plausible claim for racial discrimination in respect to either Jenkins's pay or termination. Jenkins has offered neither in the Complaint nor in the briefing any direct evidence that his employer discriminated against him on account of his race. Indeed, the Complaint does not mention any facts regarding race, the race of the Plaintiff, or the race of other employees working at the defendant's operation.[4] The only reason that a Title VII claim is even being discussed at all is because Jenkins hand wrote a note at the bottom of his Complaint, in what appears to be an outline of his claims, containing the words "race."

Additionally, there are no statements that support a *prima facie* showing of discrimination under Title VII. Jenkins does not make statements in his Complaint that shows he is a member of a protected class. He also does not make any allegations in the Complaint that would permit a plausible inference that he was treated differently from similarly situated employees of

---

[4] The claim filed by Jenkins with the EEOC does include race.

another race. Therefore, the claim alleging Title VII discrimination fails as a matter of law.

### C. Jenkins's Retaliation Claim Fails to Provide a Protected Activity or Any Casual Nexus to an Adverse Employment Action

It is unclear from the facts alleged in the COMPLAINT whether Jenkins's retaliation claim stems from his allegations that his employer violated the Equal Pay Act or Title VII. Based on Jenkins's RESPONSE TO DEFENDANT MOTION TO DISMISS (ECF No. 13), it seems that, in Jenkins's view, the retaliation claim is based on his demand for equal pay. And, that is what he told the EEOC. Jenkins states in his brief that "[t]his wrongful termination turned my life upside down and it was an obvious retaliation for just requesting the payment that I was owed." In any event, the claim for retaliation must be dismissed because there is neither a protected activity, nor a casual nexus to an adverse employment action alleged in the Complaint.

To state a claim for retaliation under either the Equal Pay Act or Title VII, "a plaintiff must provide factual allegations showing: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)(Title VII retaliation claim); see also Reardon v. Herring, No. 3:16-CV-34, 2016 WL

13

3181138, at *15 (E.D. Va. June 3, 2016) (laying out identical factors for an Equal Pay Act claim of retaliation).

Protected activities fall into two distinct categories: participation or opposition. See 42 U.S.C.A. § 2000e-3(a). Participation occurs when an individual "oppose[s] any practice made an unlawful employment practice by this subchapter." Id. "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim . . . Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).

It is imperative that the employer understand that the employee is engaging in opposition activity because the decision maker's knowledge of the protected activity is "'essential to a retaliation claim.'" Francisco v. Verizon S. Inc., 756 F.Supp.2d 705, 725-26 (E.D.Va.2010) (quoting Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998)).

In Reardon v. Herring, Reardon, a female employee at the Office of the Attorney General ("OAG"), filed a complaint alleging an EPA claim and a claim of retaliation. No. 3:16-CV-34, 2016 WL 3181138 (E.D. Va. June 3, 2016). Starting in 2011,

14

Reardon made several complaints to her employer regarding her salary falling below the matrix guidelines. Id. at *2. She received an increase in her salary in 2011 and then again in 2013. Id. In 2014, Reardon mentioned to her supervisor that she was "paid below the matrix guidelines and/or other male attorneys at the OAG. Id. She made a similar complaint in 2015. Id. She was fired in 2015. Id. Reardon's complaint alleged that the other five (5) attorneys in her section in 2015 were all male, classified as AAG IIIs (the same level as Reardon), with similar responsibilities, and that they received salaries ranging from $76,584.00 to $95,000.00 in 2014. Id. In 2014, Reardon's annual salary was $11,304.00 less than the lowest paid male AAG III attorney in Reardon's section. Id.

Defendants filed a motion to dismiss Reardon's EPA claim. The Court determined that Reardon's EPA claim was plausible because the Complaint was sufficient to infer that Reardon and her male attorneys in her section had "substantially equal duties and responsibilities." Id. at *15. Defendant's also filed a motion to dismiss Reardon's retaliation claim. In granting that motion, the Court first determined that Reardon participated in protected activity. The Court explained that some degree of formality was necessary to engage in protected activity such that "'a complaint must be sufficiently clear and

15

detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" Id. at *16 (citing Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011)). Viewing the allegations in the light most favorable to Reardon, the Court determined that the employer was "on notice of Reardon's belief that the discrepancy between her salary and her male coworkers' salaries was because of her sex. Reardon's allegations that she complained of being paid less than her male coworkers satisfy the pleading threshold required for the first element of an EPA claim for retaliation under the EPA." Id. at *16. However, because Reardon failed to demonstrate a sufficient casual nexus to the adverse employment decision, the Court dismissed the claim, explaining that "[t]he Complaint does not state specifically the duration between Reardon's complaints in early 2015 and her termination on June 15, 2015." Id. at *18 (internal quotation marks omitted).

Unlike the plaintiff in Reardon, Jenkins makes no allegation that he engaged in protected activity; therefore, a casual nexus between protected activity and the adverse employment decision simply cannot exist. In this instance, Jenkins filed the EEOC claim *after* he was fired. Therefore, it

would be impossible to base a retaliation claim based on a participation theory. Thus, the only way for Jenkins to bring a retaliation claim would be by alleging opposition. See 42 U.S.C.A. § 2000e-3(a). It is impossible to read Jenkins's Complaint as alleging retaliation for a racial complaint to his employer because, as mentioned previously, there are no statements in the Complaint regarding race. Therefore, the only retaliation claim that Jenkins could possibly allege is one based on his equal pay claim. Jenkins alleges that he was terminated because he complained to his employer about not receiving equal pay. However, unlike Reardon, where the Plaintiff complained to her employer about other employees of the opposite sex being paid more, here, Jenkins complained about equal pay regarding another male employee. There would be no way for the defendant-employer to understand that Jenkins was engaging in protected activity because there was no violation of any statute, even if Jenkins were not paid equally to the other male employee. Jenkins's complaint to his employer, while "sufficiently clear," did not "assert a right protected by any statute." Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1327-28. Because there was no protected activity of which the employer was, or should have been, aware, there can be no casual nexus between that activity and the adverse employment

17

action. Therefore, Jenkins's retaliation claim under the EPA, must be dismissed.

### D. Having Dismissed All Federal Claims, the Court Declines to Exercise Subject Matter Jurisdiction Over the Remaining State Law Claims

"Subject matter jurisdiction defines the court's authority to hear a given type of case. . . ." United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

> With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise . . . A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary . . . .

Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-40, 129 S. Ct. 1862, 1866-67, 173 L. Ed. 2d 843 (2009).

Jenkins asserted both federal and state law claims in his COMPLAINT (ECF No. 4). As explained above, the federal claims must be dismissed as legally insufficient. Under 28 U.S.C. § 1367, the district court may decline to exercise pendent jurisdiction if this district court has dismissed all claims over which there is federal jurisdiction. 28 U.S.C. § 1367(c)(3). That has happened here. And, Jenkins's state

claims are rather novel and best left to resolution by the state courts. Those claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS PLAINTIFF's COMPLAINT BY DEFENDANT MID-ATLANTIC DETAILING (ECF No. 10) will be granted. The federal claims for violation of the Equal Pay Act, violation of Title VII for retaliation and the Title VII discrimination will be dismissed with prejudice. The state law claims for wrongful termination and defamation will be dismissed without prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 14, 2016

19